NICHOLAS J. SANTORO, ESQ.
Nevada Bar No. 532
JAMES E. WHITMIRE, ESQ.
Nevada Bar No. 6533
SANTORO WHITMIRE
10100 West Charleston Blvd., Ste. 250
Las Vegas, Nevada 89135
Tel.: (702) 948-8771 / Fax: (702) 948-8773
Email: nsantoro@santoronevada.com
       jwhitmire@santoronevada.com

CHARLES MESSER, ESQ.
California Bar No. 101094
CARLSON & MESSER LLP
5901 W. Century Blvd., Ste. 1200
Los Angeles, CA 90045
Telephone  (310) 242-2202
Email: messerc@cmtlaw.com
*Pro Hac Vice* Application to Be Submitted

*Attorneys for Plaintiffs Nevada Power Company d/b/a NV Energy and Sierra Pacific Power Company d/b/a NV Energy*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| NEVADA POWER COMPANY d/b/a NV Energy and SIERRA PACIFIC POWER COMPANY d/b/a NV Energy,<br><br>Plaintiffs,<br><br>vs.<br><br>TRENCH FRANCE, S.A.S. and TRENCH LIMITED,<br><br>Defendants. | No.:<br><br>**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL** |

Plaintiffs Nevada Power Company and Sierra Pacific Power Company (collectively, "Plaintiffs" or "NV Energy"), by and through their attorneys, allege:

## JURISDICTION AND VENUE

1.  This Court has personal jurisdiction over the parties and subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1332 as the case involves disputes between citizens of different states/countries and the amount in controversy, exclusive of interest and costs, exceeds $75,000.00 (given that the claim for damages is $45,086,735).

2.  Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1) and U.S.C § 1391(b)(2).

## PARTIES

3.  Plaintiff Nevada Power Company ("Nevada Power") is a corporation which is authorized by and organized under the laws of the State of Nevada, with its principle place of business in Nevada.

4.  Plaintiff Sierra Pacific Power Company ("Sierra Pacific") is a corporation which is authorized by and organized under the laws of the State of Nevada, with its principle place of business in Nevada.

5.  Defendant Trench France S.A.S. ("Trench-France") is a corporation or similar business entity which is organized under the laws of the country of France, and whose principle place of business is located in Saint-Louis, France.

6.  Defendant Trench Limited ("Trench-Canada") is a corporation or similar business entity which is organized under the laws of the country of Canada and/or the Province of Ontario, and whose principle place of business is located in Toronto, Canada.

///

///

///

## GENERAL ALLEGATIONS

7. Defendant Trench-France designed and manufactured insulating devices known as bushings. As relevant in this case, Trench Bushings were designed and manufactured to protect persons and equipment from high-voltage electricity exceeding 50,000 volts (50 kV).

8. Defendant Trench-Canada manufactured certain Trench Bushings which were designed by Trench-France.

9. Trench-France and Trench-Canada attached a permanent steel nameplate to each Trench Bushing which they, respectively, manufactured. Each nameplate stated the bushing's origin, model number, serial number, and purported application-voltage, and power-capacity.

10. On October 1, 2015, a Trench Bushing suddenly (and without warning) exploded at Nevada Power's Higgins Generating Station near Primm, Nevada. That explosion caused damages of $4,623,482 to other equipment at Higgins Generating Station.

11. On August 16, 2016, another Trench Bushing suddenly (and without warning) exploded at Nevada Power's Equestrian Substation near Las Vegas, Nevada. That explosion caused $2,256,484 in damages to other equipment at Equestrian Substation.

12. On August 18, 2016, Trench delivered to NV Energy a notice entitled "Important Safety Technical Advisory—Immediate Action Required" ("Safety Advisory"). Trench's Safety Advisory notified NV Energy that because Trench Bushings exploded suddenly and without warning, that worker-proximity results in, "risk of serious injury or death." Trench's Safety Advisory also warned that in high-temperature environments (like Nevada), the Bushing-power-capacities were actually much lower than as stated on the permanent Trench nameplates. Trench recommended that Trench Bushings should be replaced.

13. In October 2016, NV Energy decided to replace all Trench Bushings, system-wide. This replacement-decision was based on Trench's Safety Advisory which NV Energy first received on August 18, 2016, and on subsequent emails and other communications between NV Energy and Trench.

14. The decisions by NV Energy to replace all Trench Bushings were made solely to protect the health and safety of persons (usually electricians) who are employed by NV Energy.

15. On November 24, 2016, another Trench Bushing suddenly (and without warning) exploded at Nevada Power's Frias Substation in Las Vegas, Nevada. That explosion caused $1,266,401 in damages to other equipment at Frias Substation.

16. On May 8, 2017, another Trench Bushing suddenly (and without warning) exploded at Nevada Power's Cactus Substation near Las Vegas, Nevada. That explosion caused $1,139,819 in damages to other equipment at Cactus Substation.

17. Since October 2016, NV Energy have worked diligently to replace Trench Bushings. Most of the Trench Bushings in their systems have been replaced to date, and all should be replaced before the Summer of 2020.

18. Replacing Trench Bushings in the Plaintiffs' systems which generate, transmit, and distribute electricity will cost $35,811,549.

19. In analogous cases, courts across the United States have unanimously concluded that replacement costs which are reasonably incurred to protect the health and safety of persons are property damages whose recovery is not barred by the Economic Loss Rule. See, for example, San Francisco Unified School District v. W.R. Grace & Company, 37 Cal. App. 4th 1318 (1995).

20. On July 16, 2018, plaintiff Nevada Power and the Trench defendants signed a Tolling Agreement which extended the Statute of Limitations for all then-existing-claims to August 1, 2019.

21. Defendant Trench-France has purposefully directed activities within the State of Nevada which are related to Plaintiffs' claims. For example:

    a. In 2011, Trench-France sent engineers to Las Vegas to investigate the explosion of a Trench Bushing at Nevada Power's Sinatra Substation. At Trench's request, Trench Bushings from Sinatra Substation were shipped from Las Vegas, Nevada to Trench's factory in St. Louis, France, for expert-inspections in 2011.

    b. Later in 2011, Trench-France sent engineers to Nevada Power's Crystal Substation (about 35 miles north of Las Vegas, Nevada) to inspect a Trench Bushing which exploded. Trench Bushings from Crystal Substation were later sent to engineering laboratories in California, where experts for Trench and Nevada Power attended joint tear-downs and inspections in 2012 and in 2013.

    c. In January 2015, Trench-France delivered a Safety Advisory to NV Energy which warned about possible deficiencies in certain 230 kV Trench Bushings. Plaintiffs contend that that Safety Advisory contained false and misleading misrepresentations about the safety and reliability of Trench Bushings.

22. Defendant Trench-Canada has purposefully directed activities within the State of Nevada which are related to Plaintiffs' claims. For example:

    a. In 2003, Trench-Canada wrote, printed and distributed in Nevada a Transformer Bushings catalog which stated, among other things, that, "The Trench active part design ensures that COTA bushings will last the life of your power transformer."

All of the Trench Bushings which exploded at Nevada Power facilities, and all of the Trench Bushings which the Plaintiffs have replaced and will replace, were Trench COTA bushings.

b. In 2014, Trench-Canada sent an engineer to Las Vegas, Nevada to inspect a Trench Bushing which failed at Nevada Power's Magnolia Substation. That engineer (Dave Wallace) then sent his August 18, 2014 report to Nevada Power. His report recommended that Trench Bushings from Magnolia Substation be sent to Trench-France, "for further investigations."

c. Trench-Canada's Dave Wallace attended inspections of Trench Bushings at Nevada Power's Higgins Generating Station in Nevada, in October of 2015 and in May of 2016.

d. Trench-Canada's Dave Wallace attended an inspection of Trench Bushings at Nevada Power's Equestrian Substation in Nevada, in January of 2017.

e. Trench-Canada's Dave Wallace attended an inspection of Trench Bushings at Nevada Power's Frias Substation in Nevada, in January of 2017.

f. Trench-Canada's Dave Wallace attended an inspection of Trench Bushings at Nevada Power's Cactus Substation in Nevada, in October of 2017.

23. Trench-France and Trench-Canada are not independent corporations. To the contrary, since February 2013 (and possibly earlier) they shared a common Chief Executive Officer (Dr. Ing C.S. Berendsen in 2013) and they shared a common Chief Financial Officer (M. Meiger in 2013).

24. In approximately 1995, the Trench defendants were acquired by a large German manufacturer of electrical equipment, Siemens. Since that time to the present, Trench-France

and Trench-Canada have shared a common agent, Siemens Energy (based in Phoenix, Arizona). Siemens Energy is a subsidiary of Siemens-Germany. At all relevant times since 1995, Siemens Energy was authorized by the Trench defendants to act on their behalf in the United States, including but not limited to transactions within the State of Nevada.

25. For a few years beginning in 2011, Trench-France and Trench-Canada shared another common U.S. agent, Young Power Equipment Company of Scottsdale, Arizona.

26. The Trench defendants knew, before 2010, that Trench Bushings were exploding with dangerous frequency. A professional organization, the IEEE, included failures of Trench Bushings as topic at a conference in 2010. By that time, the Trench defendants knew or should have known that Trench Bushings were dangerously exploding at a rate far in excess of its competitors' bushings, especially in hot climates such as Nevada. The Trench defendants should have issued a proper Safety Advisory in 2010, if not earlier.

27. Failures of Trench Bushings were discussed at another professional conference in 2012, hosted by Doble Engineering. By the time of the Doble conference in 2012, the Trench defendants knew that Trench COTA-bushings were dangerously exploding at a rate far in excess of its competitors' bushings, especially in hot climates such as Arizona. Trench-Canada should have issued a proper safety advisory in 2012, if not sooner.

28. In February of 2013, the Trench defendants reported to Siemens that Trench Bushings exploded with a frequency which was far greater than average, and much in excess of customers' experience or expectations. Within the next year, Siemens created a Task Force to determine why Trench Bushings so often exploded.

29. Siemens appointed Trench-France's executive Bruno Mansuy, and Trench-France's engineer Jean Meyer, as members of that Task Force. Mr. Mansuy and Mr. Meyer both

traveled to the State of Nevada to, among other things, investigate Trench Bushing explosions and to discuss bushing-reliability-issues with Nevada Power, before the October 1, 2015 explosion at Higgins.

30. Siemens also appointed Trench-Canada's Dave Wallace as another member of the Task Force. Among other things, Mr. Wallace reported his Nevada inspections (as described in paragraph 22 above) to Siemens, to the Trench defendants in France and in Canada, and to the Siemens Task Force.

31. Since at least 1995, key insulating components of Trench Bushings were negligently and defectively manufactured by both Trench defendants. Paper layers were cut crudely, and with tools not utilized by other bushing-manufacturers. The resulting rough edges lead to insulation break-down and sudden catastrophic failures. Those failures include, but are not limited to, the sudden explosions of Trench Bushings at Higgins, Equestrian, Frias, and Cactus.

32. Further, aluminum layers within Trench Bushings were designed to be installed in a consistent step-wise fashion. Both Trench defendants measured and inserted aluminum layers by hand, as opposed to using laser-guided or other automated systems used by other bushing-manufacturers. As a result, aluminum layers were installed by the Trench defendants with inconsistent steps. Such inconsistencies cause non-symmetrical forces on Trench Bushings, which leads to sudden and catastrophic failures (explosions).

33. Further, Trench Bushings are manufactured under conditions which are less hygienic than other bushing-manufacturers, which has caused unwanted and dangerous contamination of Trench Bushings during the manufacturing process.

34. The defects in Trench Bushings as described above mean that each permanent nameplate which the Trench defendants attached to each Trench Bushing states false and exaggerated information about the power-capacity of each bushing. The Trench defendants admitted this in their Safety Advisory (see paragraph 12 above).

### FIRST CLAIM FOR RELIEF

### (Negligence -- Against All Defendants)

35. The allegations of paragraph nos. 1-34 are incorporated herein as though set forth in full.

36. Defendants Trench-France and Trench-Canada negligently manufactured the Trench Bushings, and the resulting deficiencies caused Trench Bushings to suddenly explode without warning.

37. Defendants Trench-France and Trench-Canada stated power-capacities on Trench Bushings nameplates which, at all relevant times, they knew or should have known were false and exaggerated. The Trench defendants breached their duties to state accurate power-capacity-information on their bushings.

38. At all relevant times, defendants Trench-France and Trench-Canada knew or should have known that Trench Bushings would suddenly explode, especially in locations with high temperatures and/or with significant thermal cycling.

39. By the time of the IEEE conference in 2010, defendant Trench-France knew or should have known that its COTA-bushings were dangerously exploding at a rate far in excess of its competitors' bushings, especially in hot climates such as Arizona or Nevada. Further, Trench-France's claim in 2014 that its bushings had 74% of their stated capacity was false, and lacked any reasonable basis. By 2012, Trench-France knew that its bushings exploded when

loaded at less than 25% of capacity. The Trench defendants should have known of that fact by 1995.

40. The negligent manufacturing, the failures to warn, and the material misrepresentations by the Trench defendants were each proximate and legal causes of the Plaintiffs' damages.

## SECOND CLAIM FOR RELIEF

### (Strict Products Liability – Against All Defendants)

41. The allegations of paragraph nos. 1-40 are incorporated herein by reference as though set forth in full.

42. The defective designs, defective manufacturing, the defective warnings, and the material misrepresentations of the Trench defendants were each proximate and legal causes of the Plaintiffs' damages.

Wherefore, plaintiffs Nevada Power Company and Sierra Pacific Power Company pray for judgment against the defendants Trench France S.A.S. and Trench Limited, as follows:

1. For damages of $45,086,735.00, according to proof;
2. For prejudgment interest, according to law and according to proof;
3. For costs of suit incurred; and,
4. For such other and further relief as the court may deem just and proper.

///
///
///
///
///

# DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of all issues so triable.

DATED this 18th day of July, 2019.

SANTORO WHITMIRE

/s/ *Nicholas J. Santoro*
NICHOLAS J. SANTORO, ESQ.
Nevada Bar No. 532
JAMES E. WHITMIRE, ESQ.
Nevada Bar No. 6533
10100 W. Charleston Blvd., Suite 250
Las Vegas, Nevada 89135

*Attorneys for Plaintiffs*