# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

Nevada Power Company d/b/a NV Energy and Sierra Pacific Power Company d/b/a NV Energy,

    Plaintiff

v.

Trench France, S.A.S., Trench Limited, and Trench Group,

    Defendants

Case No.: 2:19-cv-01252-JAD-VCF

**Order Granting Defendants' Rule 12(b)(6) Motion; Denying as Moot Defendants' Rule 12(b)(2) Motion, Objection to the Magistrate Judge's Order, Motion to Stay Discovery, and Motion for a Protective Order; Rejecting as Moot the Magistrate Judge's Report and Recommendation; and Denying Plaintiffs' Motions for Leave to File Under Seal**

[ECF Nos. 63, 64, 96, 97, 106, 119, 122, 123, 124]

Plaintiffs Nevada Power Company and Sierra Pacific Power Company, collectively known as NV Energy, sue Trench France, S.A.S; Trench Limited; and Trench Group for the cost of replacing allegedly defective bushings at NV Energy's power facilities.[1] NV Energy seeks damages under theories of negligence and products liability, and also NRS 704.805(4),[2] which permits public utilities to recoup the direct and indirect costs of repairing their negligently damaged property. The Trench defendants, each of whom operates outside of the United States, argue that this court lacks personal jurisdiction over them and move to dismiss NV Energy's claims as barred by the economic-loss doctrine.[3] I dismiss NV Energy's complaint with prejudice because NRS 704.805(4) does not afford a private right of action and, even if it did,

---

[1] ECF No. 92 (second amended complaint).

[2] Nev. Rev. Stat. § 704.805(4).

[3] ECF Nos. 96 (Trench Limited's motion to dismiss), 97 (Trench France's motion to dismiss).

NV Energy cannot recover in tort for purely economic losses incurred by repairing and replacing allegedly defective parts.

## Background[4]

NV Energy, a public utility that provides electrical power throughout Nevada, has purchased and used bushings manufactured by the Trench defendants at its power stations for years.[5] These bushings act as electrical insulators, and each comes with a nameplate, attached by the manufacturer, that provides information about the bushing's application voltage and power capacity.[6] But in October 2015, these bushings began to explode, causing damage at NV Energy's facilities.[7] Upon investigation, the Trench defendants determined that the bushings could not operate at their stated power capacities in high-temperature environments like Nevada's.[8] NV Energy alleges that the Trench defendants' bushings exploded because they were crudely manufactured and that the Trench defendants knew these bushings were unreliable, dangerous, and prone to failure long before they began exploding.[9] Regardless, by October 2016, NV Energy determined that it would need to replace all the Trench defendants' bushings at a cost of roughly $35 million.[10] NV Energy thus sues the Trench defendants for negligence and strict products liability, and under Nevada law to recover the costs of repairing and replacing the

---

[4] This is merely a summary of facts alleged in the complaint and should not be construed as findings of fact.
[5] ECF No. 92 at ¶¶ 3–4, 8, 11–12.
[6] *Id.* at ¶ 10.
[7] *Id.* at ¶ 11.
[8] *Id.* at ¶ 13.
[9] *Id.* at ¶¶ 27–35.
[10] *Id.* at ¶ 19.

bushings.[11]  It does not seek recovery for any injuries to its employees or facilities caused by the explosions.[12]

Trench France and Trench Limited, based in France and Canada respectively, have repeatedly sought to dismiss NV Energy's claims, arguing that the economic-loss doctrine bars NV Energy's recovery in tort and that this court lacks personal jurisdiction over them.[13]  In response to a motion to dismiss for lack of personal jurisdiction, the magistrate judge directed the parties to conduct limited, jurisdictional discovery.[14]  The Trench defendants timely objected to the magistrate judge's order[15] and seek a stay of discovery pending my resolution of their objection.[16]  And while awaiting my ruling on that objection and motion to stay, the Trench defendants filed the renewed motions to dismiss at issue here,[17] as well as a motion seeking a protective order,[18] which the magistrate judge recommends I grant.[19]  For its part, NV Energy has responded to the Trench defendants' motions to dismiss and seeks leave to file under seal.[20]

**Discussion**

Generally, I would first determine whether this court has personal jurisdiction over the defendants before reaching their Rule 12(b)(6) motion.  But the Ninth Circuit authorizes courts,

---

[11] *See id.* at ¶¶ 19, 51.
[12] *See id.*
[13] *See, e.g.*, ECF Nos. 12, 28, 96, 97.
[14] ECF No. 59 (magistrate judge's order).
[15] ECF No. 63 (objection to magistrate judge's order).
[16] ECF No. 64 (motion to stay discovery).
[17] ECF Nos. 96, 97.
[18] ECF No. 106 (motion for protective order).
[19] ECF No. 119 (report and recommendation).
[20] ECF Nos. 122–24.

3

at the pleading stage, to "assume the existence of personal jurisdiction and adjudicate the merits in favor of the defendant without making a definitive ruling on jurisdiction."[21] Because the economic-loss doctrine short-circuits all of NV Energy's claims, I turn to the Trench defendants' Rule 12(b)(6) motion first and grant it, which largely moots the remaining motions and objections.

**I.  The economic-loss doctrine bars NV Energy's claims.**

"The term 'economic loss' refers to damages that are solely monetary, as opposed to damages involving physical harm to person or property."[22] The economic-loss doctrine is the judicially created rule that cabins the ability to recover purely monetary damages to contract-based theories, barring recovery in tort.[23] The doctrine "is intended to maintain traditional limits on manufacturers' liability provided by the law of warranty, except in cases of physical injury to persons or property."[24] "The primary purpose of the rule is to shield a defendant from unlimited liability for all of the economic consequences of a negligent act, particularly in a commercial or professional setting, and thus to keep the risk of liability reasonably calculable."[25]

"Broadly speaking, Nevada applies the economic loss doctrine to bar recovery in tort for purely monetary harm in product liability and in negligence cases unrelated to product

---

[21] *Lee v. City of Beaumont*, 12 F.3d 933, 937 (9th Cir. 1993), *overruled on other grounds by Cal. Dep't of Water Res. v. Powerex Corp.*, 533 F.3d 1087 (9th Cir. 2008); *see Sameena Inc. v. U.S. Air Force*, 147 F.3d 1148, 1152 n.1 (9th Cir. 1998).

[22] *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 873 (9th Cir. 2007) (analyzing Nevada's economic-loss rule).

[23] *Terracon Consultants W., Inc. v. Mandalay Resort Grp.*, 206 P.3d 81, 83 (Nev. 2009).

[24] *Giles*, 494 F.3d at 873.

[25] *Local Joint Exec. Bd. of Las Vegas, Culinary Workers Union, Local No. 226 v. Stern*, 651 P.2d 637, 638 (Nev. 1982).

liability."[26] The Nevada Supreme Court has applied the economic-loss rule to bar tort claims over a faulty airplane engine,[27] a failed drill bit,[28] and a defect-laden townhouse.[29] It has explained that products that fail to live up to their purchasers' needs or expectations are generally the dominion of warranty claims, not tort actions:

> Contract law is designed to enforce the expectancy interests created by agreement between the parties and seeks to enforce standards of quality . . . . In contrast, tort law is designed to secure the protection of all citizens from the danger of physical harm to their persons or to their property and seeks to enforce standards of conduct. These standards are imposed by society, without regard to any agreement. Tort law has not traditionally protected strictly economic interests related to product quality—in other words, courts have generally refused to create a duty in tort to prevent such economic losses.[30]

The Trench defendants contend that the economic-loss doctrine precludes NV Energy's claims because the utility seeks recovery only for the cost of repairing and replacing as-yet undamaged bushings.[31] NV Energy responds that the economic-loss doctrine does not bar its complaint because (1) it alleges accompanying property damage independent of its pure economic loss; (2) NRS 704.805(4) permits a public-utility company's recovery for economic losses incurred through repairs, surmounting the economic-loss doctrine's common-law bar; and

---

[26] *Giles*, 494 F.3d at 879.

[27] *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Pratt & Whitney Canada, Inc.*, 815 P.2d 601, 604 (Nev. 1991).

[28] *Cent. Bit Supply, Inc. v. Waldrop Drilling & Pump, Inc.*, 717 P.2d 35, 36–37 (Nev. 1986).

[29] *Calloway v. City of Reno*, 993 P.2d 1259, 1266 (Nev. 2000), *overruled on other grounds by Olson v. Richard*, 89 P.3d 31 (Nev. 2004).

[30] *Calloway*, 993 P.2d at 1265–66 (emphasis omitted).

[31] ECF Nos. 96 at 2; 97 at 2.

(3) regardless, its claims are excepted from the doctrine, largely because the Trench defendants negligently misrepresented the quality and capabilities of their bushings.[32]

### A. Property harm

The economic-loss doctrine does not bar actions seeking damages for pecuniary losses that are "accompan[ied by] personal injury or property damage."[33] But NV Energy has failed to allege any such injury. After twice amending its complaint, NV Energy exclusively seeks damages for the repair and/or replacement of bushings that have yet to explode, damage other property, or cause personal injury.[34] Impliedly conceding this, NV Energy argues that the defendants' bushings are inherently dangerous and seeks recovery for its "state-wide electrical distribution systems," which were allegedly "injured by the presence of Trench [b]ushings" that "could explode and kill innocent bystanders."[35]

NV Energy's imminent-threat-of-harm theory finds no support in Nevada law. In *National Union Fire Ins. Co. of Pittsburgh, PA v. Pratt and Whitney Canada, Inc.*, the Nevada Supreme Court declined to hold defendants liable in tort for defective products that exposed "plaintiffs to an unreasonable risk of harm" when that risk was unaccompanied by "personal injury or damage to property other than the product itself."[36] The Court confirmed that approach in *Terracon Consultants Western, Inc. v. Mandalay Resort Group*, reasoning that the economic-loss doctrine bars claims for "defective work"—even work that is "integral to the building process and impact[s] the quality of building projects"—"resulting in economic loss," and that

---

[32] ECF No. 103.

[33] *Terracon*, 206 P.3d at 86 (discussing *Local Joint Executive Bd.*, 651 P.2d at 638).

[34] *See, e.g.*, ECF No. 92 at ¶¶ 19, 51.

[35] *See* ECF No. 103 at 6.

[36] *Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 815 P.2d at 604.

6

such claims are "properly addressed through contract law."[37]  That certainly seems to be the case here:  NV Energy's facilities are not, as yet, damaged and the bushings, while suspect, have yet to explode or cause additional harm.  So the economic-loss doctrine presumptively bars NV Energy's claims, just as it barred the *Pratt and Whitney* and *Terracon* plaintiffs' claims.

With no Nevada case to power its theory, NV Energy draws on the California Court of Appeal's holding in the asbestos-contamination case of *San Francisco Unified School Dist. (SFUSD) v. W.R. Grace & Co* and its recognition that "no jurisdiction considering the issue has applied the economic loss doctrine in the context of an asbestos-in-building case."[38]  NV Energy suggests that the Trench defendants' defective bushings are akin to asbestos—"a threat to human health" and NV Energy's other property.[39]  But the *SFUSD* decision addressed the "admittedly unique" problem of asbestos contamination,[40] where "[t]he injury for which asbestos plaintiffs are being recompensed has been found to be the contamination of their buildings, not the mere presence of asbestos."[41]  That injury exists not because of the threat of future harm, but because "[t]he nature of the defect and the damage caused by asbestos differs from the defects and damages found in most other strict liability and negligence cases."[42]  When asbestos breaks down, its fibers can become airborne, contaminating the surroundings and creating a "physical danger to persons occupying a building."[43]  Appreciating this uniqueness, the *SFUSD* court held

---

[37] *Terracon*, 206 P.3d at 90.

[38] *See* ECF No. 103 at 10–11 (quoting *S.F. Unified Sch. Dist.* ("*SFUSD*") *v. W.R. Grace & Co.*, 37 Cal. App. 4th 1318, 1327–28 (Cal. Ct. App. 1995) (collecting cases)).

[39] ECF No. 103 at 11.

[40] *SFUSD*, 37 Cal. App. 4th at 1333.

[41] *Id.* at 1329.

[42] *Id*. at 1325.

[43] *Id*.

7

that "[p]hysical injury resulting from asbestos contamination, not the mere presence of asbestos, must have occurred before a cause of action for strict liability or negligence can accrue in an asbestos-in-building case . . . ."[44]

But that sort of damage is not alleged here: the bushings are seemingly undamaged and merely pose a threat of future injury; they have not contaminated the entire facility or caused physical injury or property damage. Expanding tort recovery to include economic losses based on preventing a foreseeable risk of harm, as NV Energy requests, would essentially nullify the economic-loss doctrine entirely, blurring the line between tort and warranty law[45] because a defective product could conceivably present some future risk of personal injury at any point, regardless of whether that harm has come to pass.[46] And although NV Energy's argument that the catastrophic nature of that future risk should exempt these bushings from the reach of the rule is appealing from a public-safety standpoint, the Nevada Supreme Court rejected such an exception in *Pratt and Whitney* when considering a defective engine in a crashed airplane. The Court expressly refused to "distinguish between accidental or calamitous losses having the potential for human injury on the one hand, and purely economic losses on the other," and to "hold a manufacturer liable for the former."[47] So I must, too.

---

[44] *Id*. at 1330.

[45] *CHMM, LLC v. Freeman Marine Equip., Inc.*, 791 F.3d 1059, 1062 (9th Cir. 2015) (quoting *Seely v. White Motor Co.*, 403 P.2d 145, 151 (Cal. 1965) (en banc)) (noting that the economic-loss doctrine "is rooted in 'the distinction that the law has drawn between tort recovery for physical injuries and warranty recovery for economic loss.'").

[46] *See, e.g.*, *Pratt and Whitney Can., Inc.*, 815 P.2d at 604 (finding, in a suit for tort damages based on a plane crash, that ignoring the economic-loss rule would "require a finding of 'property damage' in virtually every case where a product damages itself") (internal citations and quotation marks omitted).

[47] *Id.* at 604–05.

**B.      NRS 704.805(4)**

NV Energy also contends that a Nevada statute—NRS 704.805(4)—both provides an independent basis for its recovery and excepts its product-liability claim from the economic-loss doctrine's bar.  The statute states that:

> A person who willfully or negligently injures or destroys the property of a public utility which is used in the actual production, distribution or delivery of the service provided by the public utility is liable to the public utility for the cost of the repair or replacement of the property injured or destroyed, including the direct and indirect costs attributable to the repair or replacement but subtracting the value, if any, of salvage.[48]

No Nevada court has yet recognized a private cause of action under NRS 704.805(4).[49]  Nor has a Nevada court held that NRS 704.805(4) permits a public utility to recover, under a theory of negligence, purely monetary losses stemming from contractual breach.  In fact, another judge in this district held the opposite in a similar action between NV Energy and Trench entities, concluding that "NRS 704.805(4) does not create an independent cause of action exempt from the economic[-]loss doctrine."[50]  While I am not bound by that judge's decision,[51] I find his reasoning persuasive, and I reach the same conclusion.

---

[48] Nev. Rev. Stat. § 704.805(4).

[49] In an unpublished decision, the Nevada Supreme Court recognized that violations of NRS 704.805(4) could establish a theory of negligence but did not hold that the statute itself creates a private right of action.  *See Las Vegas Paving Corp. v. NV Energy Co.*, 281 P.3d 1194, at *1 (Nev. 2009) (unpublished).

[50] *See Nev. Power Co. v. Trench Fr. Sas*, No. 2:15-cv-264, 2016 WL 3093307, at *3 (D. Nev. June 1, 2016).

[51] The Trench defendants' repeated assertions that "this court" already addressed this statute in an earlier case, *see, e.g.*, ECF No. 105 at 4–5, ignores Local Rule IA 7-3(f), which cautions that "[a] decision by one judge in this district is not binding on any other district judge . . . and does not constitute the rule of law in this district."

9

### 1. *The statute does not provide a private right of action for purely economic-loss claims.*

I first look to the "plain language of the statute,"[52] including its related provisions,[53] to determine whether NRS 704.805(4) explicitly authorizes NV Energy's suit. Unlike related provision NRS 704.805(1), which expressly notes that a "public utility may bring a civil action for damages against any person" who tampers with utility meters and dictates a recovery amount,[54] NRS 704.805(4) has no similar language. Instead, the statute merely articulates a theory of common-law liability for those who willfully or negligently damage a public utility company's property, allowing it to recover the direct and indirect costs attributable to the property's repair. The statute does not mention who may enforce its terms.[55] NV Energy presents no textually based arguments to the contrary, merely repeating that "section 704.805 authorizes public utility companies like the [p]laintiffs to recover their [d]irect and [i]ndirect

---

[52] *S. Nev. Labor Mgmt. Coop. Comm. ex rel. Melendez v. Clark Cnty. Sch. Dist.*, 2016 WL 383147 at *1 (Nev. 2016) (unpublished) (citing *Baldonado v. Wynn Las Vegas, LLC*, 194 P.3d 96, 100 (Nev. 2008); *see also Neville v. Eighth Jud. Dist. Ct. Cnty. of Clark*, 406 P.3d 499, 502 (Nev. 2017) ("On their face, NRS 608.016, NRS 608.018, and NRS 608.020 through NRS 608.050 are silent as to whether a private right of action exists to enforce their terms.").

[53] *Univ. & Cmty. Coll. Sys. of Nevada v. Nevadans for Sound Gov't*, 100 P.3d 179, 193 (Nev. 2004) ("In construing a statute, it is well-established that a court should consider multiple legislative provisions as a whole . . .").

[54] Nev. Rev. Stat. § 704.805(1).

[55] *C.f. Neville*, 406 P.3d at 502 (finding that no explicit, private right to enforcement existed because "enforcement appears to rest with the Labor Commissioner rather than the courts").

10

[c]osts [that] are attributable to the repair or replacement of their equipment."[56] Its position lacks precedential or textual support.

But this statutory silence does not end my inquiry. As the Nevada Supreme Court noted in *Baldonado v. Wynn Las Vegas, LLC*, "in the absence of plain, clear language" establishing an explicit cause of action, a court can assess whether the Nevada Legislature intended to create an "implied" cause of action by "examin[ing] the entire statutory scheme," as well as the "reason" and "public policy" behind the statute.[57] In making this determination, *Baldonado* directs me to consider three factors: (1) "whether the plaintiffs are 'of the class for whose special benefit the statute was enacted'; (2) whether legislative history indicates any intention to create or deny a private remedy; and (3) whether implying such a remedy is 'consistent with the underlying purpose of the legislative [sch]eme.'"[58] The "determinative factor" is "whether the Legislature intended to create a private judicial remedy," keeping in mind that "the absence of an express provision providing for a private cause of action . . . strongly suggests that the Legislature did not intend to create a privately enforceable judicial remedy."[59]

The *Baldonado* factors counsel against finding that NRS 704.805(4) implies a cause of action. While neither side disputes that NV Energy is part of the class the statute protects, there is nothing in the statute's legislative history indicating that the Legislature intended NRS 704.805(4) to authorize public utilities to recover pure economic losses. Indeed, the Legislature,

---

[56] *See* ECF No. 103 at 4.

[57] *Baldonado*, 194 P.3d at 101.

[58] *Id.* (quoting *Sports Form, Inc. v. Leroy's Horse and Sports Place*, 823 P.2d 901, 902 (Nev. 1992)) (alterations omitted) (internal quotation marks omitted). The Nevada Supreme Court adopted this test from the U.S. Supreme Court's holding in *Cort v. Ash*, 422 U.S. 66, 78 (1975). And while the federal courts departed from *Cort*, as stated in *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11 (1979), there is no indication that Nevada has followed suit.

[59] *Baldonado*, 194 P.3d at 101–02.

11

in relying on the testimony of NV Energy's president, appeared primarily motivated to permit public utilities to recover repair damages in common-law actions when third-party tortfeasors drove their vehicles into power poles.[60] That is hardly the situation here.

The statutory scheme itself, which the U.S. Supreme Court directs courts to consider when divining legislative intent,[61] confirms that NRS 704.805(4) does not contain an implied cause of action for NV Energy's claims. As noted above, the Legislature chose to include a private right of action for an earlier provision, while excluding a similar cause of action for § 704.805(4). I must assume it did so for a reason.[62] And the statute makes no mention at all of recovery in tort for claims generally barred by the economic-loss doctrine. These facts, coupled with the glaring absence of an explicit private right of action, indicate that the Legislature never intended to imply a private right of action for violations of NRS 704.805(4).

### 2. *The statute does not exempt NV Energy's claims from the economic-loss rule.*

Nor does NRS 704.805(4) provide an exception to the economic-loss doctrine for NV Energy's claims. The statute make no mention of economic-loss or strict-liability actions at all, instead defining the "damages available under common law for negligent and intentional

---

[60] *See* S.B. 184, 1987 Leg., 64th Sess. at 7 (Nev. 1987).

[61] *Chickasaw Nation v. U.S.*, 534 U.S. 84, 94 (2001) (reasoning that courts should use canons of statutory construction "to help determine the Legislature's intent as embodied in particular statutory language.").

[62] *C.f. Elkins v. Moreno*, 435 U.S. 647, 666 (1978) (finding that "Congress' silence is pregnant" when it fails to specify an obligation in legislation that otherwise provides a "comprehensive and complete" treatment of the issue).

destruction of public utilities' property."[63]  In fact, the statute's inclusion of "negligence" and "willfulness" standards seemingly precludes strict-liability recovery entirely.[64]

NV Energy points to *Olson v. Richard* and *Davis v. Beling* as cases in which the Nevada Supreme Court has exempted negligence claims from the economic-loss rule under "analogous circumstances."[65]  But in *Davis*, the statute at issue authorized a private right of action[66] and created an independent legal duty with statutory damages beyond those duties merely established by contract.[67]  And in holding that "the economic loss doctrine [does not] preclude a homeowner from alleging a negligence claim in a construction[-]defects cause of action initiated [under] Chapter 40," the *Olson* court relied heavily on the fact that the statute expressly stated that it "prevails 'over any conflicting law otherwise applicable to the claim or cause of action.'"[68]  Unlike the statutes in those cases, NRS 704.805(4) affords no private right of action, contains no language stating that it supersedes or otherwise nullifies other legal bars to suit, and imposes no independent duties on potential defendants.  So I cannot reach the same conclusion as the *Olson* or *Davis* court.

---

[63] *Nev. Power Co.*, 2016 WL 3093307 at *4.

[64] *Shoshone Coca-Cola Bottling Co. v. Dolinski*, 420 P.2d 855, 857 (Nev. 1966).

[65] ECF No. 103 at 6 (citing *Olson v. Richard*, 89 P.3d 31 (Nev. 2004), and *Davis v. Beling*, 278 P.3d 501 (Nev. 2012)).

[66] *See Davis*, 278 P.3d at 507 (noting that the statute at issue "provides a statutory cause of action for the victim").

[67] *Id.* at 514 ("The economic loss doctrine does not however, bar the recovery of purely economic losses when the defendant intentionally breaches a duty that is imposed independently of the obligations arising from the contract.").

[68] *Olson*, 89 P.3d at 33.

In sum, I cannot find that NRS 704.805(4) authorizes NV Energy's suit against the Trench defendants, either by excepting its products-liability claim from the economic-loss doctrine or creating a new cause of action for negligence claims based on repair costs.[69]

### C. No negligent-misrepresentation exception applies.

NV Energy's final argument—that its claims fall within a negligent-misrepresentation exception to the economic-loss rule—fares no better than its other points. Though Nevada courts have recognized a few exceptions to the economic-loss doctrine to "allow recovery in certain categories of cases, such as negligent misrepresentation and professional negligence actions,"[70] these exceptions largely exist "in broad categories of cases in which the policy concerns about administrative costs and a disproportionate balance between liability and fault are insignificant, or other countervailing factors weigh in favor of liability."[71] NV Energy argues that the negligent-misrepresentation exception applies to this suit because the Trench defendants knew their bushings were defective yet "failed to warn [NV Energy], made material

---

[69] While it does not factor into my decision because the parties did not present this argument, I am also skeptical that NRS 704.805(4) could apply to NV Energy's claims at all. The statute imposes liability for damages related to the repair of "property injured or destroyed," Nev. Rev. Stat. § 704.805(4), and NV Energy's bushings have not yet allegedly been injured or destroyed; they are just more likely to explode under certain circumstances.

[70] *Terracon*, 206 P.3d at 87–88 (adopting *Barber Lines A/S v. M/V Donau Maru*, 764 F.2d 50, 55–56 (1st Cir. 1985) (collecting cases articulating exceptions to the economic-loss doctrine)).

[71] *Id.* at 88.

misrepresentations, and sold the dangerous bushings for years thereafter."[72]  NV Energy relies on both *Terracon* and *Halcrow, Inc. v. Eighth Judicial District Court* to support its position.[73]

Despite NV Energy's suggestion to the contrary,[74] Nevada courts have not held that all tort claims based on negligent misrepresentations that cause only economic losses are exempted from the doctrine's bar.  The *Terracon* court, in describing the negligent-misrepresentation exception, seemingly limited it to economic-loss cases in which a special relationship or extra-contractual duty existed between the parties, like that between an accountant or attorney and her clients.[75]  Even if the *Terracon* court left open the door to a broad negligent-misrepresentation exception, the *Halcrow* court closed it substantially, reasoning that such an exception requires "strong countervailing considerations" and "encompasses losses sustained, for example, as a result of defamation, intentionally caused harm, negligent misstatements about financial matters, and loss of consortium."[76]  None of those circumstances are applicable to this simple products-liability case.  And in the context of suits against commercial-construction design professionals, the *Halcrow* court expressly held that "[n]egligent misrepresentation is an unintentional tort and cannot form the basis of liability solely for economic damages" better recovered in a breach-of-contract suit.[77]  NV Energy provides no justification for why a bushings manufacturer should be treated differently than the design professional in *Halcrow*, and it alleges no special relationship

---

[72] ECF No. 103 at 9–10 (citing *Terracon*, 206 P.3d at 88, and *Halcrow, Inc. v. Eighth Jud. Dist. Ct.*, 302 P.3d 1148, 1153 (Nev. 2013)).

[73] *Id*. at 9.

[74] *Id*.

[75] *Terracon*, 206 P.3d at 87.

[76] *Halcrow*, 302 P.3d at 1153.

[77] *Id*. at 1154.

between itself and the Trench defendants.[78] So I decline to find that the Trench defendants' allegedly negligent misrepresentations can expose them to tort liability for NV Energy's purely economic losses.

## II. Personal jurisdiction

Because I find that NV Energy's claims are precluded as a matter of law by the economic-loss doctrine, I need not determine whether this court has personal jurisdiction over the defendants and thus deny as moot their Federal Rule of Civil Procedure 12(b)(2) motions. My ruling on their Rule 12(b)(6) motions also moots their objection to the magistrate judge's order permitting limited jurisdictional discovery and their motion to stay discovery pending my ruling on that objection because the termination of this action terminates the need for discovery.[79]

## III. Motions to seal confidential documents

NV Energy moves to seal and redact its responses to the Trench defendants' motions to dismiss and four exhibits.[80] NV Energy argues that sealing is appropriate because the parties' stipulated protective order requires documents marked "confidential" to be filed under seal.[81] This is insufficient.

---

[78] *See Barber Lines*, 764 F.2d at 56.

[79] ECF Nos. 63, 64.

[80] ECF Nos. 120, 121, 122, 123, 124.

[81] *See, e.g.*, ECF No. 124 at 2 (citing ECF No. 109 at ¶ 11).

### A. Standard for sealing judicial records

"The public has a 'general right to inspect and copy public records and documents including judicial records and documents.'"[82] "Although the common law right of access is not absolute, '[courts] start with a strong presumption in favor of access to court records.'"[83] "A party seeking to seal judicial records can overcome the strong presumption of access by providing 'sufficiently compelling reasons' that override the public policies favoring disclosure."[84] "When ruling on a motion to seal court records, the district court must balance the competing interests of the public and the party seeking to seal judicial records."[85]

"To seal the records, the district court must articulate a factual basis for each compelling reason to seal[,] [which] must continue to exist to keep judicial records sealed."[86] The Ninth Circuit has, however, "'carved out an exception to the presumption of access' to judicial records" that is "'expressly limited to' judicial records 'filed under seal when attached to a non-dispositive motion.'"[87] "Under the exception, 'the usual presumption of the public's right is rebutted[,]'" so "a particularized showing of 'good cause' under [FRCP] 26(c) is sufficient to preserve the secrecy of sealed discovery documents attached to non-dispositive motions."[88]

---

[82] *In re Midland Nat. Life Ins. Co. Annuity Sales Prac. Litig.*, 686 F.3d 1115, 1119 (9th Cir. 2012) (quoting *Nixon v. Warner Commcns., Inc.*, 435 U.S. 589, 597 (1978)).

[83] *Id.* at 1119 (quoting *Foltz v. St. Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)).

[84] *Id.* (quoting *Foltz*, 331 F.3d at 1135).

[85] *Id.* (citing *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006)).

[86] *Id.* (citing *Kamakana*, 447 F.3d at 1179; *Foltz*, 331 F.3d at 1136).

[87] *Id.* (quoting *Foltz*, 331 F.3d at 1135).

[88] *Id.* (quoting *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002); *Foltz*, 331 F.3d at 1135, 1138).

### B. The parties have not shown good cause to seal these records.

Assuming as true NV Energy's assertion that the Trench defendants provided and requested the protection of the documents NV Energy now seeks to file under seal, that request alone is an insufficient basis to seal. The presumption of public access is not rebutted by the existence of a protective order,[89] and neither party has articulated good cause to seal the records. So, I deny without prejudice NV Energy's motion to seal, instruct the Clerk of this Court to maintain the filings under seal, and give the Trench defendants until November 23, 2020, to file a motion that explains why these filings [ECF Nos. 122, 123, 124] should continue to be sealed and why the responses and their exhibits [ECF Nos. 120, 121] may remain redacted.

### Conclusion

IT IS THEREFORE ORDERED that Trench France and Trench Limited's motions to dismiss **[ECF Nos. 96, 97] are GRANTED based on the economic-loss-doctrine arguments and DENIED as moot in all other respects. This ruling results in the dismissal of all claims in this case with prejudice.**

IT IS FURTHER ORDERED that Trench France and Trench Limited's objection to the Magistrate Judge's Order **[ECF No. 63] is OVERRULED as moot.**

IT IS FURTHER ORDERED that Trench France and Trench Limited's motion to stay discovery **[ECF No. 64] is DENIED as moot.**

IT IS FURTHER ORDERED that Trench France and Trench Limited's motion for a protective order **[ECF No. 106] is DENIED as moot,** and the Magistrate Judge's Report and Recommendation [**ECF No. 119] is REJECTED as moot.**

---

[89] *Foltz*, 331 F.3d at 1136.

IT IS FURTHER ORDERED that NV Energy's unopposed motions for leave to file its responses and exhibits to the Trench defendants' motions to dismiss under seal **[ECF Nos. 122, 123, 124] are DENIED** without prejudice to the Trench defendants' ability to file their own motions to seal by November 23, 2020.  **I instruct the Clerk of Court to maintain the filings [ECF Nos. 122, 123, 124] under seal** in the meantime.

The Clerk of Court is directed to ENTER JUDGMENT accordingly and **CLOSE THIS CASE.**

_____
U.S. District Judge Jennifer A. Dorsey
November 12, 2020